**UNITED STATES of America, Plaintiff,**

v.

**ALCAN ALUMINUM LIMITED, Alcan Aluminum Corporation, and Atlantic Richfield Company, Defendants.**

Civ. A. No. C 84–1028 L(A).

United States District Court,
W.D. Kentucky,
Louisville Division.

Jan. 15, 1985.

**620**

Ronald Meredith, U.S. Atty., Louisville, Ky., Steven C. Douse, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for plaintiff.

James D. Moyer, Louisville, Ky., Jerome G. Shapiro, Ronald A. Stern, Washington, D.C., Edward E. Clark, Los Angeles, Cal., William E. Jackson, Charles Westland, New York City, Richard W. Pogue, A. Theodore Gardiner, III, Cleveland, Ohio, William E. Swope, Washington, D.C., San-
ford Yosowitz, Alcan Alum Corp., Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

ALLEN, Chief Judge.

This action is submitted to the Court upon the motion of the parties to enter a Consent Judgment. It is the Court's duty to review the proposed Consent Judgment, pursuant to 15 U.S.C. § 16(e), which requires in part that before entering any consent judgment proposed by the United States under this section, the Court shall determine that the entry of such judgment is in the public interest.

In 1984 the United States, acting through its Department of Justice, brought this action under Section 7 of the Clayton Act, 15 U.S.C. § 18, challenging the acquisition by Alcan Aluminum Limited (hereinafter "Alcan") of an aluminum rolling mill in Logan County, Kentucky, from Atlantic Richfield Company (hereinafter "ARCO"), which is a domestic corporation engaging primarily in the petroleum business.

In 1977 Alcan acquired Anaconda Aluminum Company (hereinafter Anaconda). Alcan is a Canadian corporation which is the largest producer of aluminum in the world. Its wholly owned subsidiary is Alcan Aluminum Corporation (hereinafter "Alcancorp."), a United States corporation which is the fourth largest manufacturer of aluminum can body stock in the United States. The three largest producers are Aluminum Company of America (hereinafter "Alcoa"), Reynolds Metals Company (hereinafter "Reynolds"), and Kaiser Aluminum and Chemical Corporation (hereinafter "Kaiser").

Arco has recently completed a rolling mill in Logan County, Kentucky, at a total cost of at least $250,000,000. It is the only complete rolling mill built in the United States in the last ten years, and its current capacity of approximately 315,000,000 lbs. is devoted entirely to the production of aluminum can body stock, which represents 14.4 percent of total 1983 shipments. It

can be expanded to double its present capacity.

Arco has not engaged in the production of aluminum can body stock. When its proposed sale of its Logan County Plant to Alcan became known, the United States sought, by its complaint in this action, to prohibit the sale on the grounds that it violated Section 7 of the Clayton Act. Subsequent to the filing of the complaint, the parties agreed and have tendered to the Court the Consent Decree, which provides that the Plant shall be owned 60% by Arco and 40% by Alcan. The Consent Decree does, however, allow Alcan to acquire more than a 40% ownership interest in the Logan County Plant if it funds more than 40% of a future capital improvement in which Arco or its successor declines to participate fully.

The Decree also allows either party to finance up to 100% of a future capital improvement, and to have the use of such improvement in proportion to its ownership interest, in the event that the other party does not choose to participate. However, the Decree provides that in that event, Alcan's greater participation in a future capital improvement would not decrease Arco's capital utilization rights in the original facility to which it is entitled by reason of its 60% ownership interest.

The Decree prohibits Arco from selling, leasing or transferring to Alcan any part of its ownership interest in the Logan County Plant during the ten-year term of the Consent Decree. Both Alcan and Arco are prevented by the Consent Decree from transferring their interest in the Plant to any of the three major domestic competitors, Alcoa, Reynolds or Kaiser. Any transfer by Arco of less than all of its interest to any other entity may not be made without the consent of the Department of Justice or the Court.

The Decree also provides that if, within three years of entry of the Final Judgment, Arco sells its interest in the Logan County Plant, and during that period Alcan undertakes a capital improvement of the heavy gauge cold mill production center, in which Arco has failed to acquire up to a 60% interest, the successor to Arco's interest will be accorded the right to purchase up to 60% interest in that improvement. The Decree also provides that the Plant will be operated by an independent management company to be owned 60% by Arco and 40% by Alcan. This proportion will remain constant during the ten-year term of the Decree, regardless of any possible changes in the parties' ownership interest in the Plant, resulting from the disproportionate funding of capital improvements. A majority of the management company's board of directors will be designated by Arco, and each party will designate an independent director. Neither party may offer a position of officer, director or employee to an independent director of the management company.

The Decree requires Arco to set up a separate marketing organization and sell its share of the Plant's output independently of Alcan. It also requires that each party to the joint venture make marketing decisions independently as to the products produced for it at the Logan County Plant.

The Decree also prohibits Alcan and Arco from selling aluminum can body stock to each other, except for temporary shortages or other emergencies, not to exceed 1,000,000 lbs. a year.

The Decree also prohibits Alcan and Arco from communicating with each other, either directly or independently, or through the management company, with regard to competitively sensitive matters, including future production schedules, present or future terms or conditions of sale, sales forecasts, marketing plans, and sales or proposed sales to specific customers.

The only objections to the proposed Consent Decree have emanated from Alcoa and Reynolds. Both companies object to Section IV, Paragraph B 6 of the Consent Judgment. That section reads as follows:

> Each party to the joint venture may utilize any unused portion of the other party's capacity by assuming the varia-

ble costs, but not the fixed costs, attributable to the added production.

Both Alcoa and Reynolds argue that this section provides a loophole that could subvert the remedial purposes of the Consent Decree.

The Government responded to this charge with the argument that because of financial incentives built into the Decree, the provision is not likely to have any effect at all; and secondly, that if it were to become effective, the risk of subversion of the Decree is more than offset by the economic benefit of achieving greater utilization of the Plant's production capacity. In addition to the objections made by Alcoa, Reynolds argues that there should be a flat prohibition on the exchange of competitively sensitive information.

■ The authority vested in this Court under the statute is one of insuring that the Government has not breached its duty to the public in consenting to the Consent Decree. The Court is not required to determine whether the Decree is the one that will best serve society, but whether it is "within the reaches of public interest." *See United States v. Bechtel Corporation,* 648 F.2d 660, 666 (9th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981). *See also, United States v. American Telephone and Telegraph Company,* 552 F.Supp. 131, 151 (D.C.D.C.1982).

Judge Greene, in *United States v. American Tel. and Tel. Co., supra,* held that while the court is not as free to exercise its discretion in fashioning a remedy as it would be upon a finding of liability, it does not follow that it must unquestionably accept a consent decree as long as it somehow, and, however inadequately, deals with the antitrust problems implicated in the lawsuit. *Id.* at 151.

■ Using the principles stated above as general guidelines, the Court believes that the proposed Decree should be approved, even though it falls short of the remedy that the Court might have imposed had the matter been litigated. Taken as a whole, the Decree provides for the entry of a new

competitor, that is, Arco, into the market. Also, of course, the Decree allows Alcan to increase its share of the market in what is a highly concentrated market. These two considerations offset each other to some extent, but the pro-competitive interests advanced outweigh the antitrust competitive interests.

It is true also that the provision that the concerns expressed by Alcoa and Reynolds with regard to Section IV, Paragraph B 6 do touch upon an area that might conceivably subvert the general purposes of the Consent Decree. But here again, that possibly is at least countered to a significant extent by the fact that this provision gives an incentive to Arco to see to it that the production of the Plant is maintained at relatively high levels.

Finally, we think it significant that no consumers of aluminum can body stock have appeared to voice any objections to the proposed Consent Decree, and that the only objections come from companies which have a higher share of the market than the parties to the Decree.

In conclusion, we will sign the Consent Decree tendered by the United States.

## FINAL JUDGMENT

Plaintiff, United States of America, having filed its complaint herein on October 5, 1984, and the plaintiff and defendants, by their respective attorneys, having consented to the entry of this final judgment without trial or adjudication of any issue of fact or law herein and without this final judgment constituting any evidence against or an admission by any party with respect to any issue of law or fact herein;

Now, therefore, before the taking of any testimony and without trial or adjudication of any issue of fact or law herein, and upon consent of the parties hereto, it is hereby

ORDERED, ADJUDGED AND DECREED:

### I.

This Court has jurisdiction of the subject matter of this action and each of the de-

fendants consenting hereto. The complaint states a claim upon which relief may be granted against each defendant under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II.

As used in this final judgment:

A. "Alcan" means the defendants Alcan Aluminium Limited and Alcan Aluminum Corporation, each division, subsidiary, or controlled affiliate of either of them, each officer, director, employee, attorney, agent, or other person acting for or on behalf of any of them, and each successor to their interest in the Logan plant, except that the management company shall not be deemed an affiliate of Alcan for the purposes of this final judgment;

B. "Arco" means the defendant Atlantic Richfield Company, each division, subsidiary, or controlled affiliate thereof, each officer, director, employee, attorney, agent, or other person acting for or on behalf of any of them, and each successor to its interest in the Logan plant, except that the management company shall not be deemed an affiliate of Arco for the purposes of this final judgment;

C. "Party to the joint venture" means Alcan or Arco;

D. "Logan plant" means the aluminum rolling mill located in Logan County, Kentucky;

E. "Management company" means the corporation that has been, or will be, formed by Alcan and Arco to operate the Logan plant;

F. "Production center" means that portion of the Logan plant dedicated to one of the following functions: melting and casting, scalp and saw, preheat, hot roll, heavy gauge cold mill, light gauge cold mill, doubler and separator, anneal, coat, slit, level, and pack and ship;

G. "Heavy gauge cold mill production center" means the production center consisting of the existing Wean United cold rolling mill and any other cold rolling mill added to the Logan plant that is designed to be used or is capable of being used economically to produce can stock;

H. "Capital improvement" means any alteration, addition, expansion, replacement, enhancement, or other improvement to one or more of the Logan plant's production centers that constitutes a capital investment within the generally accepted meaning of that term and which is designed or intended to increase production capacity, quality, or efficiency;

I. "Fixed costs" means the costs and expenses incurred in operating the Logan plant listed in exhibit 6 to this final judgment;

J. "Variable costs" means operating costs and expenses other than fixed costs;

K. "Capacity" means the ability of the Logan plant to produce rolled aluminum products, or of an individual production center to perform a distinct function that is part of the production of rolled aluminum products, as measured by maximum tonnage produceable on an annual basis or by total available machine hours on an annual basis, whichever is appropriate for the type of production center involved;

L. To "sell" an interest in the Logan plant or the management company means to sell, lease, or otherwise transfer or dispose of, in any manner, all or any part of that interest;

M. To "acquire" an interest in the Logan plant means to acquire, purchase, lease, or otherwise obtain, in any manner, all or any part of that interest; and

N. "Person" means any natural person, corporation, association, firm, partnership, or other business or legal entity.

## III.

A. The provisions of this final judgment shall apply to the defendants Alcan and Arco, their respective successors and assigns, the management company, and to all other persons in active concert or participation with any of them who shall have received actual notice of this final judgment by personal service or otherwise.

B. Each defendant shall require as a condition of the sale of its interest in the Logan plant that the person acquiring such interest agree to be bound by the provisions of this final judgment. A copy of the acquiring person's agreement to be bound shall be filed with plaintiff and the Court prior to consummation of the sale.

C. Each defendant shall provide written notice to the plaintiff no later than 30 days subsequent to the effective date of any action whereby the defendant (1) changes its name, (2) liquidates or otherwise ceases operation, (3) declares bankruptcy, or (4) is acquired by or becomes a subsidiary of another firm.

## IV.

A. Alcan shall not acquire from Arco, and Arco shall not sell to Alcan, any interest in the Logan plant, except in accordance with the terms of this final judgment.

B. Alcan and Arco may enter into a joint venture for the operation of the Logan plant pursuant to the agreements attached as exhibits 1 through 5 to this final judgment, as such agreements may be amended from time to time in conformity with sections IV(B)(16) and (17) of this final judgment, subject to the following limitations:

1. Alcan shall not acquire more than a 40 percent ownership interest in the Logan plant or in any of its individual production centers, except by funding more than 40 percent of a capital improvement as permitted by section IV(B)(2) of this final judgment, and in such event the addition to Alcan's ownership interest shall be in proportion to the percentage of the capital improvement funded by Alcan.

2. Arco shall be given the opportunity to participate in any capital improvement undertaken at the Logan plant by funding up to 60 percent of its cost. If Arco elects not to participate in a proposed capital improvement, or elects to fund less than 60 percent of its total cost, Alcan may fund the remaining cost of the improvement, up to 100 percent. If Alcan elects not to participate in a proposed capital improvement,

or elects to fund less than 40 percent of its total cost, Arco may fund the remaining cost of the improvement, up to 100 percent. The ownership interests of Alcan and Arco in the Logan plant and in its individual production centers may be adjusted in proportion to their funding of capital improvements. In no event shall a capital improvement decrease the initial capacity utilization rights to which Arco is entitled under section IV(B)(4) of this final judgment by reason of its initial 60 percent ownership interest in the Logan plant.

3. If within three years of the entry of this final judgment Arco sells its interest in the Logan plant, and if prior to the sale of Arco's interest (a) a capital improvement of the heavy gauge cold mill production center has been undertaken, (i) of which Arco has elected to fund less than 60 percent, or (ii) in which Arco has failed or declined to participate, or (b) a capital improvement has been proposed and the time period available to Arco to decide whether it should participate has not yet expired, then the person acquiring Arco's interest shall have the right, within six months after its acquisition of that interest, to serve notice upon Alcan of its intent to purchase up to 60 percent of such capital improvement. The purchaser shall acquire the interest in the capital improvement eighteen months from the date of the notice or on such other date as may be agreed to by the parties. The purchase price for any portion of a capital improvement acquired pursuant to this provision shall be the amount agreed upon by Alcan and the purchaser of Arco's interest; however, failing such agreement, the purchase price shall be an amount which in constant dollars would be equal to the purchaser's pro rata share of (a) the costs of the studies relating to the capital improvement and (b) the capital cost of such capital improvement, including start-up costs, adjusted to reflect imputed depreciation calculated on a straight-line basis over a period of 20 years.

4. Each party to the joint venture shall have the right to use the capacity of the Logan plant in proportion to its ownership

interest. Capacity utilization rights shall be determined individually for each production center in the plant. Capacity utilization rights for each production center shall be in the same proportion as the parties' ownership interests in the plant, unless the parties' relative interests have been altered by a capital improvement, in which case the parties' capacity utilization rights for the improved production centers shall be adjusted accordingly.

5. Each party to the joint venture shall contribute to the fixed costs of operating each production center of the Logan plant in proportion to its ownership interest in that individual production center. Other fixed costs relating to the Logan plant shall be borne in proportion to the parties' equity interests in the plant as a whole. A party's failure to utilize all of the capacity of any production center to which it is entitled shall not reduce its obligation to pay its full share of fixed costs attributable to that production center. This obligation must be discharged at least annually. Neither party to the joint venture shall reimburse the other directly or indirectly for any of its fixed costs, except as currently provided for in section 7.2(b) of the Logan Joint Venture Agreement attached as exhibit 1 to this final judgment.

6. Each party to the joint venture may utilize any unused portion of the other party's capacity by assuming the variable costs, but not the fixed costs, attributable to the added production.

7. Within the constraints imposed by its share of the capacity of the various production centers at the Logan plant, each party to the joint venture shall independently of the other party determine the character, specifications, and level of output of the products made for it at the Logan plant.

8. Each party to the joint venture shall independently set the terms and conditions of sale of the products made for it at the Logan plant. Each party shall maintain a separate marketing organization and shall undertake independently to sell or use internally its share of the output of the Logan plant. Except for technical support and shipping services furnished by the management company, each party to the joint venture shall be solely responsible for its own sales, customer service, customer relations, credit, billing, and collection functions.

9. Alcan and Arco shall not sell or transfer to each other or for each other's account any can stock, excepting such limited quantities (not to exceed one million pounds annually unless the Department of Justice agrees otherwise) as may be necessary to round out an order or to respond to temporary shortages or other emergencies.

10. The Logan plant shall be operated by a management company in which Alcan shall have no more than a 40 percent ownership interest. The management company shall administer the joint venture in accordance with the terms of this final judgment. It shall be solely responsible for the physical operation of the Logan plant, including but not limited to acquiring necessary supplies and services, hiring employees and independent contractors, scheduling production, computing costs and production rights, and carrying out capital improvements.

11. The management company shall be controlled by a board of directors, a majority of which shall be designated by Arco. Alcan and Arco shall each designate one independent director who shall not be a present or past officer, director, or employee of Alcan or Arco. Neither Alcan nor Arco shall offer a position as an officer, director, or employee of either company to an independent director of the management company during the director's term of service.

12. A quorum of the management company board of directors shall consist of at least three directors, one of whom shall be an independent director and a majority of whom shall be directors designated by Arco. A majority vote of the directors present at a meeting at which there is a quorum shall be sufficient to decide all matters coming before it, except as otherwise provided by this final judgment or the existing terms of the Logan Aluminum Inc.

By-Laws or Certificate of Incorporation attached as exhibits 4 and 5 to this final judgment. Additional exceptions may not be adopted without approval of the Department of Justice.

13. The chief executive officer of the management company shall be appointed by a majority of the directors of the management company designated by both Alcan and Arco and may be removed by a majority vote of the directors designated by either Alcan or Arco.

14. The management company board of directors may operate through committees, provided that at least one independent director shall be a member of each such committee, and provided further that the committees may be dissolved by a majority vote of the directors designated by either Alcan or Arco.

15. No officer or employee of the management company may be simultaneously an officer, director, or employee of Alcan or Arco.

16. Any amendment to the agreements establishing the joint venture, attached as exhibits 1 through 5 to this final judgment, shall be filed with the Department of Justice at least 30 days prior to its effective date.

17. The terms of this final judgment shall prevail over any inconsistent provisions in the agreements establishing the joint venture, attached as exhibits 1 through 5 to this final judgment, or in any amendments or supplements to those agreements that may hereafter be made by the parties to the joint venture.

18. Forthwith upon the formation of the management company, Alcan and Arco shall cause it to execute a stipulation in the form annexed hereto as exhibit 7 pursuant to which the management company agrees and consents to be bound by the terms and provisions of this final judgment.

## V.

A. Alcan and Arco shall not agree or communicate with each other, directly or indirectly, regarding each other's future production schedules for specific rolled aluminum products, present or future prices or other terms or conditions of sale, volume of shipments, marketing plans, sales forecasts, or sales or proposed sales to specific customers of aluminum products; provided, however, that nothing in this provision shall prevent Alcan and Arco from communicating with each other concerning bona fide purchase and sale transactions between them or from communicating information that is or has been generally announced or generally published.

B. Neither party to the joint venture shall communicate with the management company or any of its officers or employees regarding the other party's future production schedule for specific rolled aluminum products, present or future prices or other terms or conditions of sale, volume of shipments, marketing plans, sales forecasts, or sales or proposed sales to specific customers of aluminum products; provided, however, that nothing in this provision shall prevent Alcan and Arco from communicating with the management company concerning bona fide purchase and sale transactions between them or from communicating information that is or has been generally announced or generally published.

## VI.

A. Arco shall not sell part or all of its interest in the Logan plant or the management company to Alcan.

B. Neither Alcan nor Arco shall sell part or all of its interest in the Logan plant or the management company to Aluminum Company of America, Reynolds Metals Company, or Kaiser Aluminum and Chemical Corporation, or any of their respective parents, subsidiaries, affiliates, successors, or assigns.

C. Subject to the prohibitions against sale to the persons identified in sections VI(A) and (B), Arco shall not sell less than all of its interest in the Logan plant or the management company to any person without the prior written approval of the De-

partment of Justice or the Court. At least 45 days in advance of any such sale, the selling party shall notify the Department of Justice of the proposed sale, identify the proposed purchaser, describe the terms of the transaction, and promptly furnish such additional data as the Department may request. Within 30 days of its receipt of such notice, the Department of Justice shall notify the selling party if it objects to the proposed sale. If the Department does not object, the sale may be consummated. If the Department objects, the sale may not be consummated unless approved by the Court.

D. The seller of an interest in the Logan plant or management company that is not covered by sections VI(A) through (C) shall comply with the premerger notification and waiting period provisions of 15 U.S.C. § 18a, if applicable to such sale, or, if not, it shall give notice and, on request, additional information, as provided in section VI(C). In the event that the Department of Justice files suit in opposition to the sale of an interest in the Logan plant or management company, the selling party shall not object to such suit being filed in the district in which this final judgment is entered.

### VII.

A. Within 30 days of the date of entry of this final judgment, and annually thereafter, Alcan Aluminum Limited and Atlantic Richfield Company shall provide a copy of the final judgment (excluding exhibits) to each of their officers and directors, and to each of Alcan's and Arco's North American managerial and marketing personnel for aluminum rolling mill products, and the management company shall provide a copy of the final judgment (excluding exhibits) plus the stipulation referred to in section IV(B)(18) to its officers, directors, and managerial or supervisory employees. Persons appointed to any of these positions more than 30 days after entry of the final judgment shall be provided a copy of the judgment within 30 days of their appointment.

B. Each person who receives a copy of the final judgment pursuant to section VII(A) shall sign an acknowledgment stating that he or she has read and understands the final judgment and agrees to abide by its requirements.

C. Within 60 days of the date of entry of this final judgment, and annually thereafter, Alcan, Arco and the management company shall notify the Department of Justice in writing that the requirements of sections VII(A) and (B) have been complied with and shall provide the Department with a list of the persons to whom a copy of the final judgment was provided and who signed the acknowledgment specified in section VII(B).

### VIII.

A. For the purposes of determining or securing compliance with this final judgment, and subject to any legally recognized privilege, from time to time:

1. Duly authorized representatives of the Department of Justice shall, upon written request of the Attorney General or of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to a defendant or the management company made to its principal office, be permitted:

a. access during office hours of such defendant or the management company to inspect and copy all books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession or under the control of such defendant or the management company, who may have counsel present, relating to any matters contained in this final judgment;

b. access during business hours to the Logan plant; and

c. subject to the reasonable convenience of such defendant or the management company and without restraint or interference from it, to interview officers, employees, and agents of such defendant or the management company, who may have counsel present, regarding any such matters.

2. Upon the written request of the Attorney General or of the Assistant Attorney General in charge of the Antitrust Division made to a defendant's or the management company's principal office, such defendant or the management company shall submit such written reports, under oath if requested, with respect to any of the matters contained in this final judgment as may be requested.

B. Minutes shall be kept of all meetings of the management company stockholders, board of directors, and committees designated by the management company board of directors, and these shall be provided to the Department of Justice on request.

C. Alcan, Arco, or the management company shall, upon the written request of the Department of Justice, submit to the Department of Justice such further information as it may request relating to the operation of the joint venture or of the Logan plant, including but not limited to the amount of each product made for each party to the joint venture at the Logan plant, the identity of the customers to which each party sold can stock, the amount sold to each and prices and terms of sale, a description of every capital improvement approved or proposed to the management company, and copies of annual reports or year-end financial reports prepared by the management company.

D. No information or documents obtained by the means provided in this section VIII shall be divulged to any person other than a duly authorized representative of the Executive Branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this final judgment, or as otherwise required by law.

E. If at the time information or documents are furnished by a defendant or the management company to the Department of Justice pursuant to this section VIII such defendant or the management company represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and said defendant or the management company marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then ten days notice shall be given by the Department of Justice to such defendant or the management company prior to divulging such material in any legal proceeding (other than a grand jury proceeding) to which that defendant or the management company is not a party.

## IX.

Jurisdiction is retained by this Court for the purpose of enabling any of the parties to this final judgment or the management company to apply to this Court at any time for such further orders or directions as may be necessary or appropriate for the construction or carrying out of this final judgment, for the modification of any of its provisions, for the enforcement of compliance with it, and for the punishment of any violation of it.

## X.

This final judgment will expire on the tenth anniversary of its date of entry.

## XI.

Entry of this final judgment is in the public interest.